# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DIANE FICHERA,**

    **Plaintiff,**

**v.**                                                     **Case No. 8:08-cv-1136-T-30AEP**

**GEOVERA SPECIALTY INSURANCE**
**COMPANY, f/k/a USF&G Specialty**
**Insurance Company,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Geovera's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 26) and Plaintiff's Response to Defendant's Motion for Summary Judgment and Memorandum of Law (Dkt. 28). The Court, having considered the motion, response, record evidence, and being otherwise advised in the premises, finds that Defendant's Motion for Summary Judgment must be denied.

## BACKGROUND

Plaintiff Diane Fichera ("Plaintiff") filed this action against Defendant Geovera Specialty Insurance Company, f/k/a USF&G Specialty Insurance Company ("Defendant" or "GeoVera") based on Defendant's failure to pay Plaintiff benefits under a policy of insurance. Count I of Plaintiff's complaint asserts a breach of contract claim against Defendant based on Defendant's refusal to pay benefits under Plaintiff's insurance policy

with Defendant. (Dkt. 2). Count II of Plaintiff's complaint is a claim for declaratory relief, requesting that the Court declare Plaintiff's rights and Defendant's duties and obligations under the insurance policy. Id.

Defendant's Motion for Summary Judgment argues that it is entitled to judgment, as a matter of law, because the undisputed facts reflect that Plaintiff made a material misrepresentation in the insurance application that voids the policy. As discussed in more detail herein, the Court finds that Defendant is not entitled to summary judgment because the record evidence does not establish that Plaintiff's misrepresentation was material as a matter of law.

## FACTS

**The Berkeley Home:**

In 2002, Plaintiff purchased 8191 Berkeley Manor Blvd., Spring Hill, FL 34606 (the "Berkeley home"). In 2003, Plaintiff received homeowners insurance on the Berkeley home through Citizens Property Insurance Corporation ("Citizens"). See Affidavit of Sarah Deanne Polise. The property was rated as owner occupied and as Plaintiff's primary residence. Id; (Dkt. 26, Exhibit Q). During the policy periods of 9/8/03 to 9/8/04, 9/8/04 to 9/8/05, 9/8/05 to 9/8/06, and 9/8/06 to 9/8/07, the Berkeley home was insured as Plaintiff's primary residence. (Dkt. 26, Exhibit Q). During this same period of time, Plaintiff did not inform Citizens of any change to the status of the Berkeley home. See Affidavit of Sarah Deanne Polise. Plaintiff also homesteaded the Berkeley home through early 2007 and

frequently used the Berkeley home as her address from the time she purchased the Berkeley home through 2007.  (Dkt. 26 and Exhibits attached thereto).

**The Rhanbuoy Home**:

In 2003, Plaintiff purchased 8208 Rhanbuoy Road, Spring Hill, FL 34606 (the "Rhanbuoy home").  On or about June 24, 2005, Plaintiff completed an application of insurance, by and through Advantage Insurance, for an insurance policy with Defendant.  The application of insurance asked the following question: "Any other residence owned, occupied, or rented?"  (Dkt. 26, Exhibit B).  Plaintiff checked "No" in response to this question.  Id.  The application of insurance also stated under "Applicant's statement" the following: "I have read the above application and any attachments.  I declare that the information provided in them is true, complete and correct.  This information is being offered to the company as an inducement to issue the policy for which I am applying."  Id.  Plaintiff signed her name under the "Applicant's statement" in the space indicated for "Applicant's Signature."

On or about June 24, 2005, Defendant issued a policy of insurance to the Plaintiff, policy number GH50023367, which had a policy period of June 24, 2006 through June 24, 2007, based on the representations made in the Plaintiff's application of insurance. (Dkt. 26, Exhibits A and Y).  Pursuant to that policy, the Rhanbuoy home was insured as Plaintiff's primary residence.  Defendant does not write policies for homes that are "vacant; unoccupied; seasonal; secondary; held for rental or tenant occupied."  (Dkt. 26, Exhibit Y).

**Plaintiff's Insurance Claim on the Rhanbuoy Home:**

On or about June 27, 2006, Plaintiff reported a claim of sinkhole damage to the Rhanbuoy home. Defendant investigated Plaintiff's claim and took Plaintiff's sworn testimony on May 11, 2007. Defendant subsequently denied Plaintiff's claim and rescinded the policy based on its conclusion that Plaintiff made a material misrepresentation on the insurance application regarding her use of the Rhanbuoy home. Defendant's investigation of Plaintiff's claim revealed that she owned the Berkeley home in addition to other properties at the time that she completed the insurance application.

## DISCUSSION

### I.     Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.   Legal Analysis**

Under Fla. Stat. § 627.409, an insurer may rescind an insurance policy on the grounds of misrepresentation if it can prove either

> (a) [t]he misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer[; or]

> (b) [i]f the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy, or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in loss.

Under the statute, an insurer is not required to prove that the misrepresentation was made intentionally or knowingly. Kieser v. Old Line Life Ins. Co. of America, 712 So. 2d 1261, 1263 (Fla. 1st DCA 1998); Continental Assur. Co. v. Carroll, 485 So. 2d 406, 409 (Fla.1986).[1] Additionally, an applicant's belief is to be credited only to the extent that it is not "clearly contradicted by the factual knowledge on which it is based." Carter v. United of Omaha Life Insurance, 685 So. 2d 2, 6 (Fla. 1st DCA 1996) (citations omitted). Thus, even if an insured testified as to the truth of the information contained in an insurance application, if the underlying facts known to her at that time were in clear contradiction of her testimony, her stated beliefs would not be credited and she would be deemed to "know" of the misrepresentations.

Defendant argues that the undisputed facts demonstrate that Plaintiff's application contained a misrepresentation that Plaintiff did <u>not</u> own, occupy or rent any other residence(s). The Court agrees that Plaintiff's failure to check "Yes" to the question of "Any other residence owned, occupied, or rented?" was a misrepresentation. Plaintiff attempts to

---

[1] However, in Green v. Life & Health of America, 704 So. 2d 1386 (Fla. 1998), the Florida Supreme Court held that the parties may modify this standard by including qualifying language in the insurance contract. In Green, the application contained the following language, below which the plaintiff signed his name: "The answers given by me are full, true and complete <u>to the best of my knowledge and belief</u>. All statements made herein are deemed representations and not warranties." Id. at 1388 (emphasis added). The insurance application at issue in this case did not contain such qualifying language. (Dkt. 26, Exhibit B).

argue that her failure to check "Yes" was not a misrepresentation, because Plaintiff interprets "residence" to mean the place where you live "twenty-four seven" and the term "residence" is ambiguous.[2] (Dkt. 26, Exhibit D at 74:18-25; 75:1-16). This argument is unconvincing. Nothing in the question or elsewhere in the application permits an applicant to restrict disclosure according to his or her own interpretation of what may ultimately be covered under the policy. The language of the insurance application imposes a duty on the applicant to provide answers that are not only true and correctly recorded, but "complete." See All Children's Hosp., Inc. v. Medical Sav. Ins. Co., 2005 WL 1863409, *14 (M.D. Fla. 2005).

Importantly, even if Plaintiff sincerely believes that her definition of "residence" is correct, a court may properly find a statement false as a matter of law, however sincerely it may be believed. William Penn Life Ins. Co. of New York v. Sands, 912 F.2d 1359, 1365 (11th Cir. 1990). "To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception - persons who having witnessed the Apollo landings, still believe the moon is made of cheese." Id. In this case, the record

---

[2] Defendant argues that the Court should disregard Plaintiff's 2009 deposition testimony because it contradicts her 2007 testimony. Defendant similarly argues that the Court should strike the affidavit of Robert Pittelkow as a sham pleading because it contradicts Plaintiff's 2007 testimony. The Court holds that it would be inappropriate for it to disregard Plaintiff's 2009 deposition testimony and Mr. Pittelkow's affidavit. Although Eleventh Circuit precedent does state that a court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony, this factual scenario is not before this Court. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 (11th Cir. 2003). Rather, Plaintiff offered deposition testimony in 2009 that contradicted earlier testimony, which goes to Plaintiff's credibility. In light of Plaintiff's 2009 deposition testimony, Mr. Pittelkow's affidavit does not directly contradict Plaintiff's position. Again, however, these issues would go to credibility. Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment.

evidence is clear that the Berkeley home was another "residence." At the time that Plaintiff completed the insurance application on the Rhanbuoy home, the Berkeley home was insured as Plaintiff's primary residence, the Berkeley home was homesteaded, and Plaintiff used the Berkeley home as her home address on a number of medical and insurance documents. Indeed, the records reflect that even after the completion of the insurance application, Plaintiff continued to use the Berkeley home as her home address well into 2007 and kept the Berkeley home homesteaded. These records directly conflict with Plaintiff's answer and Plaintiff cannot avoid this conflict by making a nonsensical argument that "residence" means where you live "twenty-four seven."[3] See Mims v. Old Line Life Ins. Co. of America, 46 F. Supp. 2d 1251, 1257 (M.D. Fla. 1999) (finding a misrepresentation, as a matter of law, where medical records and testimony directly conflicted with insured's answers to the medical examiner that she had not seen a doctor in the past five years (except for one hospitalization for childbirth and a tubal ligation, and a general examination) and that she had never been treated for or had any known indication of over 70 symptoms, disorders, diseases, defects, or impairments). Thus, in light of the evidence in existence at the time that Plaintiff completed the insurance application, Plaintiff clearly should have checked "Yes" to the question regarding other residences. Accordingly, the Court finds, as a matter of law, that Plaintiff made a misrepresentation in the insurance application with Defendant.

---

[3] Notably, if Plaintiff's definition of "residence" was accepted, it would lead to absurd results and render the question meaningless, because every applicant would answer "No." Moreover, Plaintiff's definition is squarely contradicted by the "occupied, or rented" part of the question because if the term "residence" meant a place where you live twenty-four seven it could never include a home that was unoccupied or rented.

Defendant's Motion for Summary Judgment also argues that Plaintiff's misrepresentation regarding other residences was material as a matter of law. A misrepresentation is material if it affects the risk undertaken by the insurer. See Fla. Stat. § 627.409(1). The misrepresentation need not be one that would have caused the insurer to decline to issue the policy but must only be such that a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy. Singer v. Nationwide Mut. Fire Ins. Co., 512 So. 2d 1125, 1128 (Fla. 4th DCA 1987). An insurer may establish the materiality of misrepresentations through the affidavit of an underwriter. Kieser, 712 So. 2d at 1263; National Union Fire Ins. Co. Of Pittsburgh, Pa. v. Sahlen, 999 F.2d 1532, 1536 (11th Cir. 1993); Jackson Nat. Life Ins. Co. v. Proper, 760 F. Supp. 901 (M.D. Fla. 1991). Generally, however, such "Monday morning quarterbacking" is disfavored and the materiality of misrepresentations will be a factual issue to be decided by the trier of fact, which naturally precludes summary judgment. Fernandez v. Bankers Nat. Life Ins. Co., 906 F.2d 559, 567 (11th Cir. 1990). The insurer's affidavit must establish <u>clear and uncontradicted evidence</u> that the misrepresentation was material in that it <u>undisputably</u> affected the insurer's willingness to accept the risk or issue the policy on the same terms. See de Guerrero v. John Hancock Mut. Life Ins. Co., 522 So. 2d 1032, 1033 (Fla. 3d DCA 1988). In Fernandez, the Eleventh Circuit held that the insured's misrepresentations created triable issues because the record revealed disputed facts as to whether the insurer would have issued the policy had it known the truth regarding the insured's illness. 906 F.2d at 565-67.

Similarly, the record before this Court reveals disputed facts as to whether Defendant would have issued the policy had it known that Plaintiff owned any "other residence." The only evidence in the record regarding the materiality of Plaintiff's misrepresentation is the affidavit of Lisa Scaccalosi ("Ms. Scaccalosi"), an underwriter for Defendant. (Dkt. 26, Exhibit Y). Plaintiff argues that the affidavit demonstrates a disputed fact because it states that Plaintiff's failure to disclose that the Rhanbuoy home was not "her primary residence" caused Defendant to issue a policy that clearly violated its underwriting guidelines and did not qualify for its insurance programs and whether the Rhanbuoy home was not Plaintiff's "primary residence" is a disputed fact. The Court agrees. Importantly, Defendant needs to establish only that if Plaintiff had answered the question truthfully it would have put Defendant on notice that further inquiry was warranted to adequately gauge the risk of issuing a policy, however, that is not what Ms. Scaccalosi's affidavit states. Rather, Ms. Scaccalosi's affidavit states that Defendant does not insure for residences that are vacant, unoccupied, seasonal, secondary, held for rental, or tenant occupied, and the fact that the Rhanbuoy home was not Plaintiff's <u>primary</u> residence placed the occupancy/usage type of the Rhanbuoy home outside the scope of the acceptable exposures under Defendant's underwriting guidelines. As set forth herein, the underwriter's affidavit must clearly and indisputably establish that the misrepresentation was material, as a matter of law. Ms. Scaccalosi's affidavit fails to do this. The record does not clearly establish that the Rhanbuoy home was not Plaintiff's primary residence and Ms. Scaccalosi's affidavit does not undisputably establish that Defendant would not have issued the policy or, at the very

least, that further inquiry was warranted to adequately gauge the risk of issuing the policy, if it had known that Plaintiff owned or was residing at the Berkeley home.[4] Accordingly, at this point, Defendant failed to demonstrate that Plaintiff's misrepresentation was material as a matter of law and Defendant's Motion for Summary Judgment must be denied.

## CONCLUSION

For the reasons set forth herein it is therefore ORDERED AND ADJUDGED that:

1. Defendant Geovera's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 26) is hereby **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on September 15, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-1136.msj.frm

---

[4] Other than the brief aside in paragraph 9 of Ms. Scaccalosi's affidavit stating "and/or that she owned or was residing at (the Berkeley home)," the affidavit focuses on the materiality of whether the Rhanbuoy home was Plaintiff's primary residence. Notably, the affidavit also focuses on the issue of primary residence without defining the term "primary," and it is uncertain in the record whether primary contemplates that the insured is in the residence 100%, or something less than 100%.